IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| DUANE ALSIP as Administrator and Personal Representative of the Estate of Emma Alsip, | )<br>)<br>)<br>) |
| Plaintiff, | )<br>) |
| vs. | ) CIVIL ACTION NO. 14-476-CG-N<br>) |
| WAL-MART STORES EAST, LP and SOVEREIGN COMMERCIAL MAINTENANCE COMPANY, LLC., | )<br>)<br>)<br>)<br>) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on the motion of Wal-Mart Stores East, L.P. ("Wal-Mart") for summary judgment (Doc. 67), Plaintiff's opposition (Doc. 83), Wal-Mart's reply (Doc. 87) and Wal-Mart's objection to Plaintiff's opposition (Doc. 89). For the reasons explained below, the Court finds that Wal-Mart's motion should be granted.

**FACTS**

This case arises from a slip and fall that occurred on Wal-Mart's premises on or about April 23, 2013. On that date, Emma Alsip, who was 83 years old, slipped during rainy conditions on the yellow painted crosswalk near the entrance to a Wal-Mart Super Store in Foley, Alabama. (Doc. 44, ¶¶ 12-14). Plaintiff asserts two counts against Wal-Mart: (1) that Emma Alsip suffered injuries and damages

proximately caused by Wal-Mart negligently and/or wantonly maintaining the painted crosswalks in front of its store so that it was not reasonably safe for business invitees (Doc. 44, ¶¶ 15-18); and (2) that Emma Alsip was injured as a result of Wal-Mart's failure to warn her of the dangerous condition (Doc. 44, ¶¶ 19-22).[1]

On the date of the accident, Emma Alsip's daughter, Pam Marcum, drove to the Wal-Mart parking lot and Emma Alsip and a friend, Barbara Drane, were passengers in the car. (Doc. 68-1, pp. 7-8; Doc. 68-2, pp. 9-10). Ms. Marcum pulled up proximate the front of the store to let Emma Alsip and Ms. Drane out. (Doc. 68-1, pp. 9-10). It was raining at the time. (Doc. 68-1, p. 10). The rain was "moderate." (Doc. 68-2, p. 11). Ms. Drane got out of the front passenger seat and walked towards the doors. (Doc. 68-1, p. 12; Doc. 68-2, p. 11). Ms. Alsip got out next, closed the door to the car, turned around and a few minutes later her feet slipped right out from under her on the painted surface and she fell on her right side. (Doc. 68-1, pp. 12-13, 19-20). Ms. Drane started hitting on the car window and motioned for Ms. Marcum to get out and then Ms. Marcum got out of the car and ran around to find Ms. Alsip lying on the ground. (Doc. 68-2, pp. 12-14). Ms. Marcum reports that she did not have any problem with her footing when she ran around the car. (Doc. 68-2,

---

[1] Plaintiff asserts a third Count against Defendant Sovereign Commercial Maintenance Company, LLC. for negligently and wantonly failing "to apply a proper paint mixture because it did not include an abrasive additive to make the paint slip resistant when wet." (Doc. 44, ¶¶ 23-27).

pp. 15-16). Ms. Marcum got an umbrella out of the car and a man came up and helped Ms. Alsip up and get back in the vehicle. (Doc. 68-2, pp. 13-24; Doc. 68-4, p. 7). A Wal-Mart employee came out with some paperwork to document the incident. (Doc. 68-2, pp. 14, 17). Where Ms. Alsip fell the surface was wet, but there was no puddle. (Doc. 68-2, pp. 20-21). According to Ms. Drane the painted lines looked bright yellow and slick, like they had just been freshly painted, but she did not feel the painted lines and did not suggest that she had any problem walking on the crosswalk. (Doc. 68-4, p. 8).

    The parking lot in question had been restriped on January 19, 2010, by Defendant Sovereign Commercial Maintenance Company, LLC ("Sovereign"). (Doc. 68-10). Sovereign used a Sherwin-Williams traffic paint to restripe the parking lot. (Doc. 68-11, p. 17). The paint was not supplied by Wal-Mart, it was purchased by Sovereign. (Doc. 68-11, p. 5). It was industry standard to use traffic paint. (Doc. 68-11, p. 7). Sherwin-Williams traffic paint does not contain an abrasive material in it, but Sovereign would add an abrasive if they were instructed to. (Doc. 68-11, pp. 18-19). In 2010, when Sovereign restriped the crosswalk, Sovereign knew that they were to add sand to the crosswalk areas and it was their practice to do so when restriping crosswalks for Wal-Mart. (Doc. 68-11, pp. 19-20, 22-23). Sovereign reportedly used trained and experienced personnel in applying the paint and did the striping in accordance with and consistent with the manufacturer's recommendations. (Doc. 68-11, p. 21). Wal-Mart does not have a written policy or specification specifically requiring the addition of abrasive material to the paint

3

used in its parking lots, instead its written policies require that exterior walkways be slip resistant. (Doc. 68-9, pp. 17, 22; Doc. 84-7, pp. 17-18).  Wal-Mart is aware that there was another slip and fall in the parking lot.  In 2011, there was an incident where a lady slipped and fell in Wal-Mart's parking lot when it was raining; however, the incident did not occur in the crosswalk, but in a parking space in the parking lot. (Doc. 84-7, pp. 25-26; Doc. 84-15).  Additionally there is no indication as to how heavily it was raining, what the lady was doing when she fell, or that other circumstances were similar to Ms. Alsip's fall.[2]

Wal-Mart hired Traci Campbell of BEC Consulting, LLC ("BEC") to investigate the area where Ms. Alsip fell.  BEC performed slip index tests on the area on March 16, 2015 and June 29, 2015. (Doc. 68-17, ¶¶ 6, 7).  Ms. Campbell also inspected the painted stripes of the crosswalk where Ms. Alsip fell for the presence of aggregate. (Doc. 68-17, ¶ 7).  Campbell stated that abrasive appeared to be present on the painted striped lines due to the feel of the painted lines as well as visual pockmarks in the paint where abrasive had been at one time and may have worn off. (Doc. 68-17, ¶ 7).  A traffic marking surface analysis was also conducted on the area on June 23, 2015. (Doc. 68-17, ¶ 8).  Campbell concluded that the painted surface had sufficient slip resistance, even under wet and rainy conditions. (Doc. 68-

---

[2] Wal-Mart objected to this evidence in its objection to Plaintiff's opposition. (Doc. 89).  Wal-Mart argues that this evidence of a prior accident is irrelevant and inadmissible.  Upon review of the evidence, the Court agrees that Plaintiff has not shown that the prior accident is substantially similar to Ms. Alsip's incident.  Therefore, the evidence will not be considered for purposes of this summary judgment.

17, ¶ 9d).  Campbell found that the crosswalk had a slip resistant surface under foreseeable environmental conditions, that the surface meets all industry slip resistant standards and that the crosswalk was not in an unreasonably dangerous condition at the time of Ms. Alsip's fall. (Doc. 68-17, ¶ 9).

## DISCUSSION

**A. Summary Judgment Standard**

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted: "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The trial court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).   "The mere existence of some evidence to support the non-moving party is not sufficient for denial of summary judgment; there must be 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" Bailey v. Allgas, Inc., 284 F.3d 1237, 1243 (11th Cir. 2002) (quoting Anderson, 477 U.S. at 249). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, at 249-250. (internal citations omitted).

The basic issue before the Court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."

See Anderson, 477 U.S. at 251-252.  The moving party bears the burden of proving that no genuine issue of material fact exists. O'Ferrell v. United States, 253 F.3d 1257, 1265 (11th Cir. 2001).  In evaluating the argument of the moving party, the court must view all evidence in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in its favor. Burton v. City of Belle Glade, 178 F.3d 1175, 1187 (11th Cir. 1999).  "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." Miranda v. B&B Cash Grocery Store, Inc., 975 F.2d 1518, 1534 (11th Cir. 1992) (citing Mercantile Bank & Trust v. Fidelity & Deposit Co., 750 F.2d 838, 841 (11th Cir. 1985)).

Once the movant satisfies his initial burden under Rule 56(c), the non-moving party "must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial." Howard v. BP Oil Company, 32 F.3d 520, 524 (11th Cir. 1994)(citing Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)).  Otherwise stated, the non-movant must "demonstrate that there is indeed a material issue of fact that precludes summary judgment." See Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).  The non-moving party "may not rely merely on allegations or denials in its own pleading; rather, its response .... must be by affidavits or as otherwise provided in this rule be set out specific facts showing a genuine issue for trial." Vega v. Invsco Group, Ltd., 2011 WL 2533755, *2 (11th Cir. 2011).  "A mere 'scintilla' of evidence supporting the [non-moving] party's position will not suffice;

6

there must be enough of a showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990) (citation omitted). "[T]he nonmoving party may avail itself of all facts and justifiable inferences in the record taken as a whole." Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998 (11th Cir. 1992). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 at 587 (1986) (internal quotation and citation omitted).

**B. Plaintiff's Claims**

Plaintiff asserts Wal-Mart is liable for negligence, wantonness, and failure to warn with regard to Ms. Alsip's slip and fall on its premises. In a premises-liability case, a plaintiff must prove the same elements of negligence as in any tort case: duty, breach of duty, causation, and damages. Sessions v. Nonnenmann, 842 So. 2d 649, 651 (Ala. 2002). Under Alabama law, "[a] store patron is generally considered a business invitee for premises-liability purposes." Blalock v. Wal-Mart Stores E., LP, 2007 WL 1412445, at *1 (M.D. Ala. May 11, 2007). The duty owed to an invitee is "to exercise reasonable care to provide and maintain reasonable safe premises for the use of [ ] customers." Denmark v. Mercantile Stores Co., 844 So. 2d 1189, 1192 (Ala. 2002) (quoting Maddox v. Kmart Corp., 565 So. 2d 14, 16 (Ala. 1990)). However, "[t]his does not require a storekeeper to keep a floor completely dry during rainstorms." Katrensky v. United States, 732 F. Supp. 2d 1194, 1198 (M.D. Ala.

7

2010) (quoting McDonald's Corp. v. Grissom, 402 So.2d 953, 955 (Ala.1981)).  Under Alabama law, "a landowner is not the insurer of the safety of his invitees, [so] the owner's duty is negated where the invitee or customer knew or should have known about the hazard that purportedly caused his injury." Blalock, 2007 WL 1412445, at *1 (citing Ex parte Mountain Top Indoor Flea Mkt., 699 So. 2d 158, 161 (Ala. 1997); Jones Food Co. v. Shipman, 981 So. 2d 355, 361-63 (Ala. 2006)).

> [A]lthough a storekeeper owes a customer a duty to exercise reasonable care to maintain the premises in a safe condition, where the foreign substance is rainwater tracked in by customers and in the absence of unusual accumulation, due care does not require that a storekeeper keep a floor completely dry during a rainstorm or to hold him responsible for every slick place due to tracked-in rainwater would impose an unreasonable standard of care, and would, in effect, make him an insurer of the customer's safety. Of course, each case must be examined in light of its particular circumstances, and where there are unusual accumulations of rain water or other circumstances, due care may require that the storekeeper take affirmative measures such as mopping, applying anti-slip compounds, or posting warnings.

Katrensky, 732 F. Supp.2d at 1199 (quoting Terrell v. Warehouse Groceries, 364 So.2d 675, 677 (Ala.1978).  "The Alabama Supreme Court has repeatedly held that a reasonable person knows, or should know, that rain water causes surfaces to become slick, and thus, premise owners are generally not liable for slippery conditions caused by rain water." Id. (citations omitted).  On a rainy day, entrance areas are expected to be wet. See Mendez v. Walgreen Co., 2015 WL 3767218, at *5 (N.D. Ala. June 17, 2015) (noting the impact of the location of rainwater) (citing Boyd v. Wal-Mart Stores, Inc., 710 So.2d 1258 (Ala. Civ. App. 1997) and Katrensky, 732 F.Supp.2dd at 1200).  "The burden rests upon the plaintiff to show that the

injury was proximately caused by the negligence of the storekeeper or one of its servants or employees." St. v. Drury Inns, Inc., 2009 WL 4041901, at *4 (S.D. Ala. Nov. 18, 2009) (citations omitted).  Here, the Court finds that Plaintiff has not met that burden.

Plaintiff cites cases where there was sufficient evidence from which a jury could find that a defect existed in the condition of the premises, arguing that such cases are analogous to Wal-Mart's failure to add an abrasive material to the paint in the instant case.  However, the evidence in this case indicates that an abrasive was added to the paint that was applied to the crosswalk.  Even if there was enough evidence by which a jury could find that there was no abrasive applied, or that the abrasive had worn off by the time of the accident, there is no evidence that the surface was unreasonably slippery.  The area was tested, albeit two years after the incident, and found to meet industry standards for slip-resistance.  The rain made the area more slippery than when dry, but that is a hazard that was open and known to Ms. Alsip.  Ms. Alsip testified that it had been raining and because she was outside, she therefore, had to have been aware of the wet condition caused by the rain.  It is the Plaintiffs' burden to show that an "unusual accumulation" of rainwater or other circumstances existed that made the area unreasonably unsafe. There is simply no evidence, other than the fact that Ms. Alsip fell, that the area was unreasonably safe.  Ms. Drane testified that the stripes looked newly painted and slick but no one said the lines felt slick, nor did anyone have trouble navigating the crosswalk when rushing to Ms. Alsip's aid under the same conditions.  There is

no evidence that any other people slipped in the same area since the crosswalk was restriped in 2010 and there is no evidence Wal-Mart was negligent in hiring and directing Sovereign to restripe the crosswalk.  While Wal-Mart did not have a specific written policy requiring that an abrasive be used, Wal-Mart's written policy required that it be slip-resistant and the evidence indicates that Sovereign had been directed to use an abrasive when painting crosswalks at any Wal-Mart stores.  The record is also devoid of any evidence Wal-Mart knew or should have known that the crosswalk area was unsafe.  Plaintiff has not shown that Wal-Mart was negligent in any way.  There is no evidence by which a jury could find that Ms. Alsip's fall was anything other than the result of the open and obvious condition that it was raining when she got out of the car.

There is also no evidence that Wal-Mart acted wantonly.  The Plaintiff has not presented the Court with any evidence about the state of mind of any Wal-Mart employee or any argument suggesting that Wal-Mart's failure to discover, remove or do something about the rain water or the condition of the crosswalk is evidence of wanton conduct.  Evidence that an accident occurred, without evidence that the Defendant or its agents were conscious of Ms. Alsip's  injury or the potential for injury, is insufficient to prove wantonness under Alabama law.  Additionally, since Plaintiff has not shown that the crosswalk was unreasonably dangerous, there can be no liability for failure to warn.

## CONCLUSION

For the reasons stated above, the motion of Wal-Mart Stores East, L.P. Wal-Mart Stores East, L.P. for summary judgment (Doc. 67), is **GRANTED**.

**DONE** and **ORDERED** this 16th day of November, 2015.

/s/  Callie V. S. Granade
UNITED STATES DISTRICT JUDGE